623 F.2d 893
 Elaine Jean STEMPLE, by her father, and next friend,
Rosswell C. Stemple, Appellant,
v.
The BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY; Norman H.
Saunders; A. James Golato; Lesley Kreimer; Sue V. Mills;
Maureen K. Steinecke; Chester E. Whiting; Susan B. Bieniasz;
Jo Ann T. Bell; Bonnie F. Johns, Christine A. Dant,
Individually and as members of the Board of Education of
Prince George's County
and
State Board of Education of The State of Maryland; Richard
Schifter, William Sykes, Mary Elizabeth Ellis, William M.
Goldsborough, Joanna T. Goldsmith, Albertine Thomas
Lancaster, Lawrence A. Miller, Charles E. Thompson, G.
George Asake, Individually and as members of the State Board
of Education of the State of Maryland, Appellees.
 No. 79-1208.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 3, 1980.
Decided May 27, 1980.
 
 Donald N. Bersoff, Baltimore, Md. (Susan P. Leviton, Baltimore, Md., on brief), for appellant.
 Ellen M. Heller, Asst. Atty. Gen., Baltimore, Md. (Stephen H. Sachs, Atty. Gen., of Maryland, Baltimore, Md., James J. Mingle, Asst. Atty. Gen., Paul M. Nussbaum, Mount Rainier, Md., and Richard C. Daniels on brief), for appellees.
 Before WINTER, BUTZNER and PHILLIPS, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 Plaintiff, by her father, sued the Board of Education of Prince George's County, Maryland (the County), the Maryland State Board of Education (the State) and, in their individual and official capacities, the persons comprising both bodies to obtain a reimbursement for the tuition cost of her private education. Deeming the proffered educational program in the public schools inadequate for her needs, her parents withdrew her from the public schools and enrolled her in a private school for handicapped children. Plaintiff also challenged the state regulation assigning the burden of proof in state administrative proceedings, in which she contested the adequacy of the public program and the appropriateness of her school assignment. The district court dismissed the complaint, Stemple v. Board of Ed. of Prince George's County, 464 F.Supp. 258 (D.Md.1979), and plaintiff appealed. We affirm, albeit for reasons different from those assigned by the district court.
 
 I.
 
 2
 Plaintiff is a multi-handicapped adolescent girl with a long history of physical and emotional disabilities. Since she has attended school, the County and her parents have recognized that she needed special educational training. From 1969 until January, 1976, she was afforded such training by the County and her parents voiced no formal objection to her placement. During that period, she was taught for the entire school day in the small group setting of special education classes. In January, 1976, the County decided to place her in a normal classroom setting for part of the school day to assist her in developing socialization skills with her peers. By May, 1976, plaintiff's parents concluded that she was not progressing scholastically or emotionally. They therefore withdrew her from public school and placed her in a private non-residential school for handicapped children, located in Alexandria, Virginia. She was a student there until September, 1978, until, after lengthy but cooperative negotiations with the County as to the educational program that plaintiff would pursue, plaintiff was re-enrolled in the public schools.
 
 
 3
 On June 18, 1976, plaintiff, by her father, asked the County for tuition reimbursement for her private schooling contemplated for the 1976-77 school year. Her request was pursuant to a state law providing that the cost of a nonpublic school education shall be paid by local authorities of the child's domicile and by the state when the child needs special educational services not provided in a public program. See Ann.Code of Md., Art. 77, § 106D(g). The request was denied in August, 1976. Plaintiff took an appeal, but not until May 27, 1977. A hearing on her appeal was held by the County on August 19, 1977. The hearing officer found that the County could provide plaintiff with an appropriate education in its public schools for the 1976-77 school year and that there was not sufficient evidence to justify her placement in a private school.
 
 
 4
 Exercising her statutory right to further review, plaintiff appealed the hearing officer's decision to the Maryland State Department of Education Hearing Review Board (the State Hearing Board). See Ann. Code of Md., Art. 77, § 100A. Her appeal was heard on February 17, 1978, and the State Hearing Board's decision was rendered on February 28, 1978. The Board decided that plaintiff "manifests learning needs for which appropriate services can be provided by the Prince George's County Public Schools," and it recommended that she "be returned to the appropriate school within Prince George's County where the support services needed are available." Its findings were directed only to the school year 1976-77 for it deemed itself without jurisdiction to consider funding for May and June, 1976, and the 1977-78 school year.
 
 
 5
 In the hearing before the State Board, plaintiff sought a ruling that the County bore the burden of proof with regard to the appropriateness of her placement. The requested ruling was contrary to Bylaw 13.04.01.21(B)(6)(h) of the Maryland State Department of Education, which assigns to the party proposing any placement change the initial responsibility to present evidence supporting its appropriateness and places the ultimate burden of proving or disproving appropriateness upon the student's parents, except where school officials do not propose placement in a free educational program. Although the Board ruled at the hearing that it was bound by the bylaw, its decision recited that all of the evidence of all parties had been considered and stated, "(t) his decision is based solely on the evidence and testimony made available for review and the additional testimony and evidence presented at the hearing."
 
 
 6
 Plaintiff then instituted this action asserting jurisdiction under § 615 of the Education for All Handicapped Children Act of 1975 (EHCA), 20 U.S.C. § 1415, and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Section 615 of EHCA had been enacted by Pub.L. 94-142 on November 29, 1975, but it became effective on October 1, 1977, while plaintiff's appeal was pending before the State Hearing Board but after the occurrence of the operative events challenged in the appeal. Plaintiff sought judicial review of both the substantive result and the procedural fairness of the administrative denial of tuition reimbursement. With regard to procedural fairness, plaintiff sought a ruling that, notwithstanding the Maryland bylaw, the burden of persuasion throughout the administrative proceedings should be on the County and State and not on her, and that, in the proceeding before the State Hearing Board, the State wrongly introduced a written report which she had had no prior opportunity to examine.
 
 
 7
 The district court granted a motion to dismiss filed by the defendants. It ruled that plaintiff could not obtain judicial review under § 615 of EHCA because the challenged administrative proceedings concern reimbursement for a period prior to the effective date of EHCA. It ruled also that the challenged bylaw did not infringe § 504 of the Rehabilitation Act, and that it was unnecessary for it to rule on the admission of the challenged written report since plaintiff sought money damages from the state and such a claim was barred by the Eleventh Amendment. See Stemple v. Board of Ed. of Prince George's County, supra.
 
 II.
 
 8
 In plaintiff's appeal, her principal contention is that the district court was in error in ruling that § 615 of EHCA was unavailable to permit substantive and procedural review of the state administrative proceedings. She argues that she sought review to vindicate rights theretofore granted in federal and state statutes, not the creation of those rights; and therefore she seeks no retrospective application of § 615. In any event, she contends further, retroactive application of § 615 would be proper under Bradley v. School Bd. of City of Richmond, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). Her remaining contentions are that, in the administrative proceedings, the burden of proof was improperly placed on her, and the Maryland bylaw with respect to burden of proof violates federal law. She also asserts that her claim for tuition reimbursement is not barred by the eleventh amendment.
 
 
 9
 As we view plaintiff's appeal, we need not decide any of the issues that she seeks to raise. Her case reaches us in the posture that the sole ultimate issue to be decided is her claim to tuition reimbursement either for the school year 1976-77 or for the entire period that she attended the private school. She has voluntarily returned to public school; thus any contentions about the burden of proof in administrative proceedings or the effect of the eleventh amendment in the context of this case are real issues only to the extent that they affect her right to reimbursement. By the language of § 615, if it is assumed to be applicable here, we think that plaintiff has no right to reimbursement, and that there is thus no need to decide the various issues that she seeks to raise. We elaborate on our conclusion that plaintiff cannot obtain tuition reimbursement under § 615 in what follows.
 
 III.
 
 10
 The EHCA of which § 615 is a part was a further strengthening and amendment of title VI of the Elementary and Secondary Education Act, Pub.L. 89-750, first enacted in 1966. The 1966 legislation was passed to create the Bureau of Education for the Handicapped which was intended to provide strong administrative support and leadership for existing programs for the education of handicapped children. The 1966 legislation was first amended on April 13, 1970, by the enactment of Pub.L. 91-230. The 1970 amendment created a separate act, the Education of the Handicapped Act, and, inter alia, authorized grants to the States to assist them in initiating, expanding, and improving programs for the education of handicapped children.
 
 
 11
 A second amendment to the basic 1966 legislation was enacted in 1974 by Pub.L. 93-380, entitled the Education of the Handicapped Amendments of 1974. The 1974 legislation extended Title VI for 3 years, increased federal spending and authority, and added state eligibility requirements to bolster "the steadfast Federal commitment to the education of all handicapped children." H.Rep.No. 93-805, 93rd Cong. 2d Sess., U.S.Code Cong. and Admin.News, 4093, 4137 (1974).
 
 
 12
 The 1975 enactment with which we are most concerned was intended "to establish in law a comprehensive mechanism which will insure that those provisions enacted during the 93rd Congress (the 1974 legislation) will result in maximum benefits to handicapped children and their families." S.Rep. 94-168, 94th Cong. 1st Sess., U.S.Code Cong. and Admin.News, pp. 1425, 1430 (1975). Congress explicitly recognized that court action and state laws throughout the nation had made clear that the right to education of handicapped children "is a present right." Id. at 1441. Of course, a principal purpose of the 1975 enactment was to pump more money into the local school systems to enable them to meet the requirements imposed upon them by earlier laws, but, inter alia, the bill required the states to establish procedures for consultation with individuals concerned with the education of handicapped children and procedures to monitor the states' compliance with the requirements of law, to upgrade classification procedures for identifying handicapped children, and to establish procedural safeguards for parents to contest decisions regarding the identification, evaluation and educational placement of handicapped children.
 
 
 13
 Section 615, a totally new enactment, was adopted to achieve the last objective. It accomplishes a number of things. It requires any state, local or intermediate educational agency receiving federal funds to establish and maintain certain minimum procedures. § 615(a). These include: a parent's right of inspection of relevant records, designation of a surrogate for a child's parents or guardian if they are not known, written notice and an opportunity to be heard whenever an agency proposes to initiate or refuses to initiate a change in a child's placement, and a right to an "impartial due process hearing." § 615(b)(1)-(2). The section provides further that, if the required hearing is conducted by a local or intermediate educational agency or unit, a person aggrieved by the decision shall have a right to appeal to the state educational agency, § 615(c), where he shall have the right to be represented by counsel, to present evidence and confront, cross-examine and compel the attendance of witnesses, to receive a record of the hearing, and to receive written findings of fact and decisions. § 615(d). The decision made in a hearing conducted in accordance with the provisions of § 615 is final subject to the right of appeal, and the decision of a local or intermediate unit (where there is no right of appeal) or the decision of a state educational agency may be reviewed in an action instituted in a state court of competent jurisdiction or a district court of the United States without regard to the amount in controversy. § 615(e)(1) and (2).
 
 
 14
 Significant for our purposes is the further provision of that section, § 615(e)(3):
 
 
 15
 During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed.
 
 
 16
 Section 615(e)(3) has little specific legislative history of its own. It is mentioned only in the Joint Explanatory Statement of the Conference Committee (Sen.Conf.R.No. 94-455; Home Conf.R.No. 94-664, both of the 94th Cong. 1st Sess.), where it is said:
 
 
 17
 The provisions of existing law with respect to the binding effect of due process hearings and appropriate administrative and judicial review of such hearings are clarified and language is also adopted to require that during the pendency of any administrative or judicial proceedings regarding a complaint, unless the State or local educational agency and the parents or guardian of the child otherwise agree, the child involved in the complaint shall remain in his or her present educational placement, or, if the complaint involves an application for initial admission to public school the child shall, with the consent of the parents or guardian be placed in the public school program until the completion of all such proceedings.
 
 
 18
 U.S.Code Cong. and Admin.News, 1503 (1975).
 
 
 19
 Taken literally, the language of § 615(e)(3) creates a duty on the part of parents who avail themselves of the hearing and review provisions of § 615 to keep their child in his current educational assignment while the hearing and review provisions are pending, absent agreement between them and the education authorities that some different arrangement be made. Of course, that duty may not be totally enforceable by the state, but it certainly negates any right on the part of parents, in violation of the duty and in the absence of agreement, to elect unilaterally to place their child in private school and recover the tuition costs thus incurred.
 
 
 20
 To the extent that we can discern legislative intent from overall consideration of the 1975 act and its forebears and the brief, specific reference to § 615(e)(3) in the legislative history, we think that the statute should be given the literal effect we have described. By enactment of the 1975 legislation, Congress was assuming major control and major financing of the national program of education of handicapped children. As part of that effort, Congress was providing for the strengthening and upgrading of evaluation procedures and it enacted a generous bill of rights for parents, guardians, and surrogates of handicapped children who might wish to contest the evaluation and placement policies of educational authorities. There would be reason and design in saying that while the procedures for administrative hearing, administrative review and judicial review mandated by Congress were being employed, the status quo should be preserved unless it was altered by consent. The concept of preserving the status quo even including the payment of benefits (see, e. g., Longshoremen's and Harbor Workers' Compensation Act § 21(b), 33 U.S.C. § 921(b), pending litigation at the administrative and judicial level until an ultimate resolution is reached is a familiar one in American law. For example, under Rule 65, F.R.Civ.P., courts will ordinarily refrain from issuing preliminary injunctions which threaten to disturb the status quo and they will frame any equitable relief to preserve the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing. 11 Wright and Miller, Federal Practice and Procedure § 2948, at 464-66. Thus we think that the statute means just what it says; and since there was a duty not to move plaintiff until a final decision, plaintiff is lacking in any right to recover tuition payments for her parents' unilateral decision to send her to a private school while she was seeking redress for the claimed violation of her rights.
 
 
 21
 Plaintiff contends that § 615(e)(3) is inapplicable to her, because her parents' decision to send her to a private school was made before the administrative and appeal provisions of § 615 were initially invoked. We reject this contention. It places too restricted a reading on § 615(e)(3). We do not think that the application of § 615(e)(3) depends upon the fine distinction between whether proceedings under § 615 are initiated before or after the duty to preserve the status quo is breached. The duty, it seems to us, arises as soon as school authorities make a decision as to identification, evaluation and placement of a handicapped child and continues until a decision not to contest it is reached or, if a contest ensues, until that contest is finally determined.
 
 
 22
 In summary, we do not decide plaintiff's several contentions. We decide only that if plaintiff is entitled to avail herself of the remedies in § 615 (a question we also do not decide), they will avail her nothing with regard to reimbursement of tuition expense. Her subsidiary contentions have become moot since she voluntarily returned to public school.
 
 
 23
 AFFIRMED.